UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RYAN BESSERT,

        Plaintiff,

    v.                                    Case No. 18-C-1187

LANGLADE COUNTY, et al.,

        Defendants.

---

## DECISION AND ORDER

Plaintiff Ryan Bessert, who is representing himself, is proceeding with a claim that the defendants were deliberately indifferent toward his amputated legs and failed to accommodate his disability under the Americans with Disabilities Act (ADA). Dkt. No. 16 at 4-6. Bessert filed a motion for summary judgment on March 6, 2020. Dkt. No. 64. The defendants filed a motion for summary judgment based on Bessert's failure to exhaust administrative remedies on May 26, 2020. Dkt. No. 73. This order grants the defendants' motion for summary judgment, denies the plaintiff's motion for summary judgment, and dismisses the case without prejudice.

## BACKGROUND

At the time relevant to this case, Bessert was an inmate at the Langlade County Jail. Dkt. No. 75, ¶1. He is a double amputee who walks on prosthetic legs. *Id*., ¶¶10, 54, 83. Defendants Don Bergbower, Brenda Malitz, Heidi Walrath, Julie Powell, Robin Dailey, Jason Schwarz, Andy Volkmann, Donald Schroepfer, Joseph Stegall, Tammy Stegall, Laura Ward, Thomas Hunter, James Benishek, Theodore Skarlupka, Alyssa Hendricks, Joshua Warren, Eric Erickson, and Amy Volkmann were jail employees. *Id*., ¶3. Defendant Langlade County is a governmental entity

organized under the laws of the State of Wisconsin. *Id*., ¶2. The relevant facts are undisputed. *Compare* Dkt. Nos. 64 at 6-7, ¶¶1-10, *with* Dkt. No. 75.

On June 7, 2016, Bessert was booked into the jail and was placed in a "temporary" cell that was handicap accessible. Dkt. No. 75, ¶¶9-16. Two days later, Bessert was moved to his "permanent" cell in J-Block. *Id*., ¶17. His permanent cell was not handicap-accessible, but it was the largest cell available in J-Block and was located closer to the jail's main facilities (i.e. the booking area, classrooms, nurse's station, video courtroom, and showers). *Id*., ¶¶18-24, 68. Bessert also received a wheelchair, a thicker mattress, and a shower-chair to accommodate his disability. *Id*., ¶¶22, 55, 65-67.

Bessert states that he "had issues" with his cell in J-Block because it was not handicap-accessible. Dkt. No. 64 at 7, ¶7. He "requested to be moved from J-Block to a handicapped cell or have modifications made to J-Block." *Id*., ¶8. He claims that "Langlade County Jail Staff [are] aware of [his] disability." *Id.* at 6, ¶5. According to Bessert, "[a]ll staff at Langlade County Jail, up the chain-of-command to the Jail Administrator, ignored [his] requests." *Id*. at 7, ¶9.

The defendants remember Bessert as an inmate at the jail in 2016 but they don't recall him ever complaining about being housed in J-Block.[1] Dkt. No. 75, ¶¶25-26. The "jail log" for June 7, 2016, through December 4, 2016, does not contain any entries noting that Bessert was unhappy with this housing assignment in J-Block. *Id*., ¶¶38-39. And Bessert's medical records do not show any injuries or falls during his incarceration. *Id*., ¶¶40-42, 48-50.

Defendant Don Bergbower, the jail administrator, reviewed all inmate grievances filed in 2016. *Id*., ¶35. Bergbower states that Bessert did not file any grievances (or appeals) complaining

---

[1] "The defendants" refers to the individuals who were employed by the jail between June 2016 and December 2016. Several defendants named in this case, including Thomas Hunter and Tammy Stegall, were retired before June 2016. *See* Dkt. No. 75, ¶¶4,6.

about the conditions of his confinement in J-Block. *Id.*, ¶¶34, 36-37. During his deposition, Bessert admitted that he filed no grievances challenging his placement in J-Block. *See* Bessert Depo., Dkt. No. 86-1 at 49:1-3, 50:8-9. Bessert explained,

> I feel that my safety of falling and concerns about my disability and [being] placed in a nonhandicapped cell outweighs a grievance form. I feel I should not have to fill out a grievance form to get placed into a nonhandicapped cell which I never should have been placed in in the first place.

*Id.* at 50:10-16.

Bessert did file several Inmate Request Forms while at the jail, which asked to speak to the jail administrator. Dkt. No. 75, ¶¶60, 62. Inmate Request Forms can be used to communicate information, authorize actions, or speak to jail staff. *Id.*, ¶58. An Inmate Request Form is not the same as an Inmate Grievance Form, and a decision made in response to an Inmate Request Form can serve as the basis for filing an inmate grievance. *Id.*, ¶61.

Bessert also wrote two letters regarding the conditions of his confinement to Denise Ellis, a "Facilities Specialist" for the Department of Corrections (DOC). *Id.*, ¶¶43, 69. He wrote his first letter on June 24, 2016. *Id.*, ¶43. Ellis forwarded this letter to Bergbower on July 7, 2016. *Id.* In response, Bergbower spoke to Ellis and explained that J-Block was the appropriate placement for Bessert. *Id.*, ¶¶43-45, 51-56. J-Block was closer to the jail's main facilities, requiring less use of his prosthetics, and it was closer to the continuously staffed jail booking desk. *See id.*

Bessert wrote his second letter to Ellis on August 2, 2016. *Id.*, ¶69. Following this letter, Ellis went to the jail to visit Bessert on August 12, 2016. *Id.*, ¶70. After her visit, Ellis stated her belief that Bessert should be moved to an entirely handicap-accessible cell block, even if it meant greater isolation from other programs. *Id.*, ¶¶71-72. That same day, Bessert was moved to PP-

block which contains a cell that is completely handicap-accessible. *Id*., ¶¶73-74. Bessert remained on PP-block until his release from the jail on December 4, 2016. *Id*., ¶77.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

"[N]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "The primary justification for requiring prisoners to exhaust administrative remedies is to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006); *Schillinger*

4

*v. Kiley*, 954 F.3d 990, 995-96 (7th Cir. 2020)). The exhaustion requirement "protects the prison's administrative authority" by giving it an opportunity to correct its own mistakes before suit is filed against it in federal court. *Schillinger*, 954 F.3d at 995-96.

"To satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." *Chambers*, 956 F.3d at 983 (citing *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019)). Prisoners must file their inmate complaints and appeals in the place, at the time, and in the manner that the institution's administrative rules require. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Exhaustion is mandatory and district courts have no judicial discretion to excuse an inmate's failure to exhaust available administrative remedies. *See Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016).

The Langlade County Jail outlines its inmate grievance procedure in the Inmate Handbook. Dkt. No. 77-2. Under jail procedures, "Before a formal grievance is filed, the inmate must attempt to resolve the issue by speaking to a staff member." *Id*. at 1. "If the issue cannot be informally resolved by the staff member the inmate must submit an 'inmate request' to discuss the issue with a jail supervisor or speak with the supervisor directly." *Id*. "If the issue cannot be informally resolved by the supervisor the inmate may file a formal grievance." *Id*. A formal grievance "must be filed within seven (7) calendar days of the occurrence giving rise to the grievance." *Id*. at 2, ¶1. "If a grievance is denied an appeal may be filed with the Jail Lieutenant within seven (7) calendar days of receiving the decision." *Id*., ¶7. If the appeal is denied, the inmate may request a "final review" by the Jail Administrator. *Id*., ¶¶8-9.

The undisputed evidence shows that Bessert did not file any inmate grievances or appeals about the claims in this lawsuit prior to bring this lawsuit. Bessert admits as much in his deposition and response brief. *See* Bessert Depo., Dkt. No. 86-1 at 49:1-3, 50:8-16; *see also* Dkt. No. 130.

5

Instead, he claims that his case should not be dismissed for several other reasons, none of which are persuasive.

First, Bessert states that he verbally told all of the named defendants about his issue and he "put out several requests." Dkt. No. 130 at 2-3. Making verbal complaints and filing Inmate Request Forms may have satisfied the preliminary steps of the jail's grievance process, but there were at least three other mandatory steps that Bessert did not complete, including filing a formal written grievance and appealing it all the way to the Jail Administrator. To properly exhaust administrative remedies, Bessert was required to "take each of the steps" prescribed by jail's administrative rules, which he did not do. Bessert did not satisfy the exhaustion requirement by verbally complaining about his issue or by filing Inmate Request Forms.

Second, Bessert states that a formal written grievance "would have been rejected anyway." *Id.* at 3. He notes that he has "many other grievances [] out there" and the jail "don't follow their own procedures." *Id*. at 4. He identifies several inmate complaints from 2020 that allegedly were not processed properly. *See* Dkt. No. 67-1; Dkt. No. 130-1. Bessert's other inmate grievances from 2020 have no bearing on this case from 2016. In any event, there is no futility exception to exhaustion under the PLRA. *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006) ("Exhaustion is necessary even if . . . the prisoner believes that exhaustion is futile."). Bessert was required to file a formal inmate grievance even if he thought it would be "rejected."

Third, Bessert argues that the egregiousness of his complaint (i.e. that he is a double amputee who did not get a handicap-accessible cell) meant that he should not have had to file an inmate grievance. Dkt. No. 130 at 4. He states, "the defendants' apparent lack of human sympathy is completely repulsive." *Id*. Exhaustion is mandatory and district courts have no judicial discretion to excuse an inmate's failure to exhaust available administrative remedies. There is no exception under the PLRA for incidents that a plaintiff perceives as particularly egregious. The

6

PLRA does have an exception for when administrative remedies are "unavailable," but Bessert has not asserted that he could not acquire or file an inmate grievance because of his disability.

Finally, Bessert states that his letters to Denise Ellis satisfied exhaustion. *Id.* at 4. Ellis worked for the DOC (not the jail), so Bessert went *outside* of the jail's grievance process to attempt to get his issue resolved. Bessert cannot avoid the consequences of failing to use the jail's grievance procedures by claiming that the jail should have had notice of his issues through other outside avenues. The jail clearly outlined its grievances procedures in the Inmate Handbook, and Bessert concedes he did not follow them. Bessert cannot workaround these clearly outlined grievance procedures by contacting an entirely different governmental agency. The defendants are therefore entitled to summary judgment based on Bessert's failure to exhaust administrative remedies prior to bringing this lawsuit. Accordingly, the Court will grant the defendants' motion for summary judgment, deny Bessert's motion for summary judgment, and dismiss this case without prejudice.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment based on failure to exhaust administrative remedies (Dkt. No. 73) is **GRANTED**; the plaintiff's motion for summary judgment (Dkt. No. 64) is **DENIED**; and this case is **DISMISSED** without prejudice. The clerk's office shall enter judgment accordingly.

Dated at Green Bay, Wisconsin this 3rd day of March, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge